392 A.2d 779

**COMMONWEALTH of Pennsylvania**

v.

**Harry L. LONG, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1977.

Decided Oct. 20, 1978.

252

Roy H. Davis, Assistant Public Defender, Drexel Hill, for appellant.

D. Michael Emuryan, Assistant District Attorney, with him Frank T. Hazel, District Attorney, Media, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Appellant files this direct appeal alleging a violation of his right to a prompt trial under Pa.R.Crim.P. 1100. The relevant facts contained in this case may be summarized as follows:

A criminal complaint charging appellant with possession of narcotics was filed on November 21, 1974. The record establishes that from the inception date of this complaint, the Commonwealth was clearly aware of the fact of appel-

lant's incarceration outside of Pennsylvania, at the Delaware State Prison in Smyrna, Delaware. Under the 180-day period applicable for commencement of appellant's trial,[1] the Commonwealth was required to bring appellant to trial no later than May 20, 1975. On January 6, 1975 the case was sent to the Clerk of Courts, Criminal Division, Delaware County Common Pleas Court, and lodged in the docket on January 8, 1975. On January 28, 1975 a notice of grand jury presentment was mailed to appellant at the Delaware State Prison. A letter dated January 30, 1975 from the Supervisor of the Delaware Prison was received by the Delaware County District Attorney formally advising him of appellant's incarceration in their institution. On March 3, 1975 the indictment against appellant was approved by the Grand Jury. When appellant was not presented for arraignment on March 19, 1975, the lower court issued a bench warrant as a detainer sent to the Delaware State Prison.

On May 5, 1975, the Commonwealth filed a request for extension of time for trial pursuant to Pa.R.Crim.P. 1100(c),[2] with a copy of the request sent to appellant on May 7, at the Delaware State Prison. On May 9, 1975, the lower court granted the Commonwealth extension, ex parte and without a hearing. The order granting this extension specified the new date within which trial must be commenced as "no later than August 20, 1975." On June 4, 1975 the District Attorney wrote to appellant, inquiring as to whether appellant would be willing to return to Pennsylvania voluntarily.

1. Pa.R.Crim.P. 1100(a)(2) provides:
   "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

2. "At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

Appellant refused and on June 10, 1975 the district attorney initiated proceedings under the Interstate Detainer Act[3] to acquire appellant's presence for trial in Pennsylvania. On June 16, 1975 when the case was called for trial, the Commonwealth obtained a *continuance* from the lower court to September 15, 1975 on the ground that appellant was still in Delaware State Prison.

On September 10, 1975 appellant was returned to Pennsylvania and counsel was appointed. On October 7, 1975 (317 days after the complaint) appellant tendered a negotiated plea agreement which the trial court refused to accept on January 16, 1976 and therefore permitted appellant to withdraw the plea.[4] On January 29, 1976 (429 days after the complaint)[5] appellant filed an application to dismiss under Rule 1100(f) which was denied on February 27, 1976. Finally, appellant was tried and convicted of possession and possession of a controlled substance with intent to deliver on March 10, 1976 (469 days after the complaint). This appeal followed.

On the basis of these facts, Rule 1100 has been violated and appellant must be discharged *unless* the Commonwealth can demonstrate that valid extension(s) of time for commencement of trial were obtained in accordance with Pa.R. Crim.P. 1100(c),[6] or that the period for commencement of trial was extended by automatic operation of Pa.R.Crim.P. 1100(d) which sets forth specific periods of exclusion based upon, as is alleged in this instance, "the unavailability of the defendant." Pa.R.Crim.P. 1100(d)(1).[7]

3. Act of September 8, 1959, P.L. 829, §§ 1–8 (19 P.S. §§ 1431–38).

4. See Pa.R.Crim.P. 319 (Pleas and Plea Agreements).

5. However, from this 429 day total, is excluded the period of time from October 7, 1975 to January 16, 1976 (99 days) which was consumed by the trial court in deciding whether to accept appellant's negotiated plea agreement. Therefore, 330 days had elapsed from the date of the complaint to January 29, 1976 when appellant filed his motion to dismiss.

6. See n. 2 supra.

7. Rule 1100(d):

■ The Commonwealth does not defend the validity of the extension granted on May 9, 1975 by a showing of due diligence to support the request. The Commonwealth and the lower court rely instead on Rule 1100(d)(1) upon which they contend that a complete and total period of exclusion was created by the appellant from the date of complaint until his compulsory return from Delaware State on September 10, 1975, a period of 200 days. We find this contention untenable. The position of the Commonwealth and the trial court is that Rule 1100(d)(1) provides that the period of time during which a defendant is unavailable by "contesting extradition" is not to be computed against the Commonwealth. While we agree with this statement, we find it to be inapplicable to the facts of the instant case.

Appellant argues that the extension granted on May 9, 1975 was defective because due diligence on the part of the Commonwealth was not established. Further, appellant contends that the *total time* he was incarcerated in Delaware State is not to be excluded but only the portion of that time during which he occupied the Commonwealth by actually *contesting formal extradition proceedings* are to be excluded. Appellant's position is correct in both regards.

■ The Commonwealth's sole application for an extension of time pursuant to Rule 1100(c) granted on May 9, 1975 without an adversary hearing was improper and ineffective for several reasons. First, this application for extension was a "form petition" of the variety which this court specifically condemned in *Commonwealth v. Ray,* 240 Pa.Super. 33, 360 A.2d 925 (1976). The only addition to this form petition was a one line typed-in statement on page 3 stating: "Trooper Koper, a witness, will be in Holland until the middle of June." This petition clearly failed to establish "due dili-

"In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:
(1) the unavailability of the defendant or his attorney;"

gence by the Commonwealth." Rule 1100(c). The petition contained the bald assertion that the "District Attorney of Delaware County is ready, prepared and able to proceed immediately to the trial of the within defendant . . .," contradicting its own statement it could not proceed without Trooper Koper[8] and more significantly making no mention of the fact that the defendant, Harry Long, was incarcerated in the State of Delaware, a fact that the Commonwealth was keenly aware of from the inception of these proceedings on November 21, 1974 when the complaint was filed.[9] Nor was there any statement in this petition as to what attempts, if any, were made by the Commonwealth to secure defendant's return to Pennsylvania for trial, therefore due diligence by the Commonwealth was clearly lacking. Also, we note that at the time this extension was sought, 169 days of the 180-day period for trial had already elapsed. As we stated in *Commonwealth v. Ray,* supra:

> ". . . these form petitions are usually filed at the very last minute of the prescribed time period. And, normally, they are granted without a hearing . . . . We believe that these form petitions not only frustrate the intent of Rule 1100, but also denigrate the procedures prescribed therein. We have seen no petition of this form type which attempts to *establish the exercise of due diligence by the Commonwealth* beyond the recitation of

**8.** In fact, the Commonwealth did proceed without Trooper Koper. The Commonwealth's evidence at the suppression hearing contained a stipulation that Trooper Koper, if called, would testify as to the facts contained in the probable cause section of the search warrant. As to these facts, Trooper Clifford Shaw was called and testified in place of Trooper Koper. Trooper Shaw and Trooper Koper had been partners and both were present when the warrant was typed and affirmed. The right to confront witnesses is not absolute and substitute evidence may be admissible depending on the circumstances. See *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974).

**9.** The officers testified that they were aware of appellant's incarceration in Delaware at the time the warrant was issued. Also, the transcript filed by the District Justice on January 9, 1975 noted that "Defendant presently in state prison, Smyrna, Delaware." Moreover, on January 30, 1975 the records supervisor of the Delaware Prison so advised the District Attorney by letter.

the words themselves. As such, they are defective." (Emphasis added.)

■ In addition to our finding that the May 9, 1975 extension was invalid as lacking due diligence by the Commonwealth, the record shows that even assuming arguendo, that the extension was properly granted, the Commonwealth still failed to try appellant within the prescribed time period of the extension. The May 9, 1975 order granting the Commonwealth's extension stated "said trial to commence no later than August 20, 1975." By August 20, 1975 appellant had not been tried, in fact he had not yet been returned to Pennsylvania and no further request for extension under Rule 1100(c) was sought by the Commonwealth prior to August 20, 1975 or anytime thereafter. Although the Commonwealth did, on June 16, 1975, obtain a *continuance* within the extension period to September 15, 1975, this did not operate to extend the time period for trial under Rule 1100.[10] Such an ex parte continuance, without notice to the defendant and proof of due diligence by the Commonwealth is not the same as an application for an extension as contemplated by Pa.R.Crim.P. 1100(c). *Commonwealth v. Kincade,* 246 Pa.Super. 389, 371 A.2d 894 (1977); *Commonwealth v. Kollock,* 246 Pa.Super. 16, 369 A.2d 787, 788, n. 2 (1977). Accordingly, since the Commonwealth failed to obtain a second valid extension within the specified period for trial as set forth in the first extension order, to wit, August 20, 1975, Rule 1100 was again violated. *Commonwealth v. O'Shea,* 465 Pa. 491, 350 A.2d 872 (1976); *Commonwealth v. Woods,* 461 Pa. 255, 336 A.2d 273 (1975).

■ No valid extension(s) having been obtained, we now turn to the question of whether the Commonwealth is entitled to an automatic period of exclusion by operation of Rule

---

**10.** While routine continuances can be granted within Rule 1100 periods for trial or extension(s) thereon, here the trial court erred in setting the continuance date (September 15, 1975) beyond the previous Rule 1100(c) extension date of August 20, 1975. See *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694, 697 (1976); *Commonwealth v. O'Shea,* supra.

1100(d)(1). The position taken by the Commonwealth and the Court below is that appellant caused the delay by contesting his extradition to Pennsylvania and therefore the entire period of time during which appellant was unavailable from November 21, 1974 (date of complaint) until his return to Pennsylvania on September 10, 1975 was properly excluded. As authority for this position, the Commonwealth cites the case of *Commonwealth v. Richbourgh,* 246 Pa.Super. 300, 369 A.2d 1331 (1977). It is true that in *Richbourgh* we found that the accused was "unavailable" for the entire period of time during which he was incarcerated in another state. While the standard of "due diligence" by the Commonwealth was not specifically discussed in the *Richbourgh* opinion, it was nevertheless applied. We there emphasized the need for prompt and diligent action on the part of the Commonwealth by painfully detailing the actions taken by the Commonwealth in attempting to extradite the accused. Several months later, in the case of *Commonwealth v. Kovacs,* 250 Pa.Super. 66, 378 A.2d 455 (1977), we had occasion to comment on and clarify the *Richbourgh* rationale as follows:

> "Implicit in our decision in *Richbourgh,* however, was the recognition that a defendant will be considered unavailable *only for the period of time during which his presence could not be secured despite due diligence by the Commonwealth.*" 250 Pa.Super. 70, 378 A.2d at 457.

Moreover, an accused will not be deemed "unavailable" by an unexplained Commonwealth assertion that he is incarcerated elsewhere. The burden is upon the Commonwealth to show by a preponderance of evidence that sufficient action was pursued in an attempt to bring the absent defendant back for trial. *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977). Only that portion of time during which the accused actually contests diligent extradition efforts is excluded based upon unavailability. See *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972).

Further support for the applicability of the "due diligence" standard and delineation of the exclusionary provi-

sion of Pa.R.Crim.P. 1100(d)(1) is contained in the Comment to Rule 1100 stating:

> "For purposes of subparagraph (d)(1) . . . the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; or during which he contested extradition, or a responding jurisdiction delayed or refused to grant extradition . . ."

In the instant case, the Commonwealth failed to adequately explain why it did not initiate formal extradition proceedings or invoke the procedures available under the Interstate Agreement on Detainers Act in the form of a written request to gain custody of appellant until June 10, 1975, even though it knew of appellant's incarceration in Delaware State from the date of the criminal complaint itself filed on November 21, 1974 (200 days earlier). See *Commonwealth v. Kovacs,* supra; *Commonwealth v. McCafferty,* 242 Pa.Super. 218, 363 A.2d 1239 (1976).[11] Since the prescribed Rule 1100 period expired long before appellant filed his motion to dismiss we must therefore reverse and dismiss the charges with prejudice pursuant to Rule 1100(f).

It is so ordered.

JACOBS, President Judge, concurs in the result.

VAN der VOORT, J., dissents.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

---

11. In *McCafferty,* supra, we ruled that the protections of Rule 1100 were to be afforded to all criminal defendants prosecuted in Pennsylvania including those defendants incarcerated outside the state.